711 So.2d 464 (1997)
Ex parte Robert B. GRANT and Fraunda M. Grant.
(Re Robert B. GRANT, et al. v. PALM HARBOR HOMES, INC., et al.).
1951586.
Supreme Court of Alabama.
November 14, 1997.
Rehearing Overruled February 20, 1998.
Hugh E. Holladay of Blair, Holladay & Parsons, Pell City, for petitioners.
Michael L. Bell and Lee M. Hollis of Lightfoot, Franklin & White, L.L.C., Birmingham; and Billy L. Church of Church, Kennedy & Seay, Pell City, for respondent Palm Harbor Homes, Inc.
A. Joe Peddy, David A. Hughes, and Bryan Scott Tyra, Birmingham, for respondent Minton Industries, Inc., d/b/a Minton Home Center.
ALMON, Justice.
Robert B. Grant and Fraunda M. Grant, husband and wife, petition for a writ of mandamus ordering Judge William E. Hereford, of the Circuit Court of St. Clair County, to set aside his order compelling arbitration of the Grants' claims against Palm Harbor Homes, Inc., and Minton Industries, Inc., d/b/a Minton Home Center. The Grants bought a mobile home from Minton. The mobile home had been manufactured by Palm Harbor.
The only arbitration clause pertaining to this purchase is in a "Worksheet-Estimate" that a Minton salesperson filled out and signed. The Grants also signed the worksheet. It is dated September 14, 1994. At the top of the worksheet is the following language:
"Customer has executed a credit application in conjunction with this worksheet estimate and understands that this is merely an estimate and there is no contractual obligation or right to buy until the customer's credit has been approved and a retail installment contract or other contract or [sic] sale is signed by the customer. *465 This worksheet-estimate may be subject to change."
An "Arbitration Provision" appears at the bottom of the worksheet, stating, in part:
"All Parties hereto agree, covenant, and consent that any and all controversies or claims arising out of or in any way relating to this agreement whether in the nature of covenant, warranty or any other branch [sic] of this agreement shall be settled solely by arbitration...."
Also before us is a "Mobile Home Invoice and Bill of Sale," dated November 9, 1994, and signed by the Grants, whereby they "hereby acknowledge receipt of the described Mobile Home and a copy of this invoice." The bill of sale gives the price of the unit, its description, its serial number, and other particulars.
Because the "Worksheet-Estimate" specifically states that it creates "no contractual obligation or right to buy," it is not a contract. "The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala. 1993); Steiger v. Huntsville City Bd. of Ed., 653 So.2d 975, 978 (Ala.1995).
"A test of good consideration for a contract is whether the promisee at the instance of the promisor has done, forborne or undertaken to do anything real, or whether he has suffered any detriment, or whether in return for the promise he has done something he was not bound to do, or has promised to do some act or to abstain from doing something."
Roberts v. Lindsey, 242 Ala. 522, 525, 7 So.2d 82, 84 (1942); Russell v. Russell, 270 Ala. 662, 668, 120 So.2d 733, 738 (1960). "[T]o constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d 585, 587 (Ala.1987).
In the "Worksheet-Estimate" neither party has promised to do anything: "there is no contractual obligation or right to buy until... a retail installment contract or other contract [of] sale is signed by the customer." The "invoice and bill of sale" form contains no arbitration clause. It makes no reference to any terms from the worksheet; rather, the terms of the sale are stated in the bill of sale, just as they are in the worksheet. Other than the purported arbitration agreement, the worksheet expressly disavows the creation of any contractual obligations, and none of the terms of the worksheet are expressly incorporated into any later document by which the parties are contractually bound.
Minton and Palm Harbor object that the Grants did not make this argument to the circuit court. However, the face of the documents before us show that there is no contract in which the parties have agreed to arbitrate, and the defendants have not attempted to refute this showing. They argue that "where there is more than one writing involved in a transaction, the court interprets the writings together," ANCO TV Cable Co. v. Vista Communications Ltd. Partnership I, 631 So.2d 860, 863 (Ala.1993). However, that general principle of contract law cannot apply here, where the "worksheet-estimate" states unequivocally that it creates no obligations or rights in either party. Therefore, we see no basis on which the circuit court could properly have granted the motion to compel arbitration, and we will not deny the writ based simply on the defendants' assertion that the plaintiffs did not point out to the circuit court the language on the face of the documents.
Under these facts, we hold, as we did in Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala.1997), that an arbitration clause in a document that reflects initial negotiations does not become a binding agreement to arbitrate when the parties later execute an entirely separate contract that contains no arbitration clause and does not depend for its terms or enforcement upon any terms in the initial document. In short, the evidence before us does not show a contract between Minton Industries and the Grants that contains an arbitration agreement. Therefore, the order compelling arbitration is due to be set aside.
*466 Additionally, the order compelling arbitration of the Grants' claim against Palm Harbor is due to be set aside on the authority of Ex parte Isbell, 708 So.2d 571 (Ala. 1997), because Palm Harbor is not a party to the contract between the Grants and Minton Industries, or to any contract by which the Grants have agreed to submit disputes with it to arbitration.
WRIT GRANTED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent, with opinion by SEE, J.
SEE, Justice (dissenting).
The majority holds that because the Grants' arbitration agreement with Palm Harbor and Minton is not supported by a legally binding contract, Palm Harbor and Minton cannot compel the Grants to arbitrate. I respectfully dissent.
First, the issue whether the arbitration clause, contained in the worksheet estimate, is supported by a legally binding contract is not properly before this Court. The Grants failed to challenge the validity of the contract at trial and therefore may not make such a challenge for the first time on appeal. See Abbott v. Hurst, 643 So.2d 589, 593 (Ala.1994) (stating in explicit terms that "[t]his Court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court"); Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992) (same).
Second, the arbitration clause is in fact supported by a legally binding contract. The language in the worksheet estimate, which contains the arbitration clause, provides:
"Customer has executed a credit application in conjunction with this worksheet estimate and understands that this is merely an estimate and there is no contractual obligation or right to buy until the customer's credit has been approved and a retail installment contract or other contract or [sic] sale is signed by the customer. This worksheet-estimate may be subject to change."
(Emphasis added.) After signing this worksheet-estimate, which contained the arbitration clause, the Grants did receive credit approval and signed a "retail installment contract or other contract" which described the same mobile home listed on the worksheet estimate. See Stiegler v. Dittman, 584 So.2d 507, 511 (Ala.1991) (stating "[t]he controlling general principle of law is that two writings connected by reference one to the other, or made with respect to the same subject matter and proved to be parts of an entire transaction, constitute but a single contract as if embodied in one instrument").
The majority disregards the "until the customer's credit has been approved and a retail installment contract ... is signed" language contained in the worksheet-estimate. Instead of denying the existence of a contract, this language creates a condition precedent. Once the condition precedent is satisfied  in this case, the Grants' receiving credit approval and signing an additional document  the worksheet-estimate becomes a binding contract.[1] See 3A Corbin on Contracts § 628, at 16 (1960); Duncan v. Rossuck, 621 So.2d 1313, 1314 (Ala.1993) (stating that "a contract provision making the contract subject to the procurement of a loan to finance the purchase price is a valid condition precedent to performance"); Schottland v. Lucas, 396 So.2d 72 (Ala.1981) (stating that a provision in the contract requiring the buyer to first obtain financing is a valid condition precedent to the creation of a binding contract). Therefore, the arbitration clause contained in the worksheet-estimate is binding and *467 enforceable.[2] See Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (stating that arbitration agreements are enforceable when they are encompassed in a valid contract involving interstate commerce).
I dissent.
HOOPER, C.J., and MADDOX, J., concur.

On Application for Rehearing
ALMON, Justice.
APPLICATION OVERRULED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., dissent.
HOUSTON, Justice (dissenting).
Upon further reflection, I am convinced that the phrase "until the customer's credit has been approved and a retail installment contract ... is signed" creates a condition precedent, which was satisfied upon the Grants' receiving credit approval and signing the retail installment contract before the worksheet estimate became part of the single contract upon the satisfaction of the condition precedent; therefore, I conclude that the arbitration provision was part of the contract. Upon original submission, I should have dissented, instead of concurring in the result. I would grant the application for rehearing; therefore, I dissent.
NOTES
[1] In Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 616 (Ala.1997), the initial arbitration agreement signed by the plaintiff did not become part of the subsequent retail buyer's order because that order expressly provided that it "cancel[ed] and supersede[d] any prior agreement and ... comprise[d] the complete and exclusive statement of the terms of the Agreement." There is no such exclusivity language in the retail installment contract signed by the Grants. Therefore, the subsequently executed retail installment contract in this case fulfilled a condition precedent to the binding effect of the arbitration clause, and did not extinguish the arbitration clause.
[2] The majority also cites Ex parte Isbell, 708 So.2d 571 (Ala.1997) (on application for rehearing), for the proposition that Palm Harbor, as a nonsignatory to the arbitration agreement, cannot compel the Grants to arbitrate. This is inconsistent with the published opinions of the federal circuit courts of appeals that have interpreted the Federal Arbitration Act. See Isbell, 708 So.2d 571 (Hooper, C.J., dissenting) (citing Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)).