776 So.2d 105 (2000)
SOUTHERN ENERGY HOMES, INC.
v.
William D. HENNIS.
1982118.
Supreme Court of Alabama.
August 4, 2000.
*106 John Martin Galese and Jeffrey L. Ingram of Galese & Ingram, P.C., Birmingham, for appellant.
Joseph C. McCorquodale III and Jacqualyn S. Bradley of McCorquodale & McCorquodale, Jackson, for appellee.
COOK, Justice.
Southern Energy Homes, Inc. ("Southern Energy"), appeals from an order denying its motion to compel the arbitration of claims presented in an action commenced against it by William D. Hennis. We affirm.
The dispositive issue in this case is whether Southern Energy and Hennis had an agreement to arbitrate disputes between them in connection with Hennis's purchase of one of Southern Energy's manufactured homes. On that issue, "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration.... In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim." Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 (Ala.1999) (emphasis added) (internal quotation marks omitted). Only after a motion has been made and properly supported does the burden shift to the party opposing arbitration "to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Id. (internal quotation marks omitted). Southern Energy has failed to present evidence of the existence of an agreement sufficient to shift the burden of production to Hennis.
To illustrate the factual brevity of the case presented by Southern Energy, we set forth its "Statement of Facts" in toto, as follows:
"On September 25, 1996, Plaintiff purchased a manufactured home from Jack Lee Mobile Homes. The home had been manufactured by Southern Energy Homes, Inc. (`Southern Energy').
"With the purchase, Plaintiff received a [Homeowner's] Manual from Southern [Energy]. That manual included the warranty issued by Southern [Energy] on the home and an arbitration provision covering the disputes at issue.
"After purchasing the home, Plaintiff became dissatisfied with the home and filed suit for, among other things, breach of warranty containing the arbitration agreement."
Brief of Appellant, at xiii (citations to the record omitted.)
Actually, we note that Hennis sued not only Southern Energy, but also Jack Lee Mobile Homes ("Jack Lee"), the entity from which he had purchased the unit. His complaint sought compensation under theories of negligence, fraud, and breach of warrantiesboth express and implied.
*107 In count seven of the complaint, Hennis alleged that "[w]hen [he] purchased the mobile home, or shortly thereafter, [Southern Energy] provided [him] a HOME OWNER'S MANUAL," which included "a paragraph [purporting] to be an agreement that any dispute or claim [would] be submitted to binding arbitration." (Capitalization in original.) He further alleged that the arbitration provision was "unilateral in nature, ... is not signed by the Plaintiff or any of the Defendants, and is thus, unenforceable by any of the parties." He sought a judgment declaring the arbitration provision provided in the Homeowner's Manual to be "null and void and not enforceable." Only Southern Energy moved to compel arbitration. After the trial court denied the motion, Southern Energy appealed.
In support of its brief allegation that the parties have an agreement containing an "arbitration provision [that covers] the disputes at issue," Southern Energy presented only two items of "evidence."[1] The first item consists of what purports to be pages 4 and 5 of a "Homeowner's Manual." That item was presented to the trial court in connection with Southern Energy's motion to compel arbitration, as "Exhibit `A.'" The second item was also presented in connection with the motion to compel arbitration, as "Exhibit `B.'" Neither itemby itself or in conjunction with the otherconstitutes evidence of an agreement to arbitrate.
Exhibit A provides in part:
"IF THE RETAILER DOES NOT RESOLVE THE PROBLEM
"If the Retailer is unable to resolve a problem which you feel is covered by your warranty, you should contact the appropriate division of Southern Energy and provide a written description of the problem and the attempts made to resolve it.
"SOUTHERN ENERGY'S OBLIGATIONS
"Upon receipt of a notice of a warranty claim, Southern Energy will repair or replace any parts necessary to correct defects in materials or workmanship, or will take other appropriate action as may be required.
"IF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM
"If Southern Energy's representatives are unable to resolve the problem and you are convinced it is covered by the warranty, you should call Southern Energy's Corporate Headquarters to describe the problem and the attempts made to resolve it.
"IF THE CORPORATE HEADQUARTERS OF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM
"If the problem is still not resolved, you can contact the manufactured housing agency for your state. You will find your state agency's address in this Guide.
"IF THE PROBLEM IS STILL NOT RESOLVED
"If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:
"In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, *108 whether such product is or is not `new,' any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 USC 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
But Exhibit A is not signed by anyone. Not only so, but there is nothingother than Southern Energy's assertionto show whether pages 4 and 5 are, in fact, pages from a homeowner's manual. A fortiori, there is no evidence that they are excerpts from the Homeowner's Manual that was supplied to Hennis, or from one that was identical in form.
To be sure, Exhibit B purports to address the Homeowner's Manual. Exhibit B purports to be the affidavit of "Don McNutt," who, the document asserts, is "a manager for Southern [Energy]." The "affiant" states that "Southern [Energy] extended a written, limited warranty to the Plaintiffs [sic] in connection with their [sic] purchase of the subject home from Jack Lee Mobile Homes. The warranty was contained in a Homeowner's Manual which accompanied the house." However, the affidavit obviously does not reference Exhibit A specifically or otherwise identify it as the "Homeowner's Manual which accompanied the house" delivered to Hennis.
Moreover, the "affidavit," itself, bears only a signature purporting to be that of "Don McNutt." In other words, as Hennis correctly points out, it is unsworn. Specifically, it states:
"Before me, the undersigned Notary Public, in and for said state and in said county personally appeared Don McNutt who being known to me upon oath duly administered deposed and said as follows:
". . . .
"Further, your affiant saith not."
Despite the boilerplate recitation of the first paragraph, the document is not witnessed by a notary public.
But even had the evidence clearly shown that Hennis received a copy of the arbitration provision that is contained in the record, Southern Energy yet failed, as a matter of law, to show the existence of a contract. "The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Ex parte Grant, 711 So.2d 464, 465 (Ala.1997) (emphasis added) (internal quotation marks omitted).
Assent must be manifested by something. Ordinarily, it is manifested by a signature. See Commercial Credit Corp. v. Leggett, 744 So.2d 890, 895-96 (Ala.1999); Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891, 893 (Ala.1999); Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618 (Ala.1997).
Assent may be manifested by ratification. See Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622 (Ala.1999). That case, like this one, involved an action against Southern Energy by the purchasers of a mobile home manufactured by Southern Energy. In that case, however, Southern Energy offered some evidence indicating that the purchasers had accepted the benefits of its warranty. Specifically, it contended that it had made service calls to the mobile home at the request of the purchasers in order to effect repairs covered by the warranty. 754 So.2d at 626. This Court remanded the cause for a finding as to whether the buyers had ("agreed, by ratification [through accepting the benefits of the warranty] or otherwise, to submit their claims against Southern Energy to arbitration"). Id. at 626.
However, the manufacturer's unilateral enclosure of an arbitration provision in a *109 homeowner's manual iswithout more insufficient as a matter of law to show that the buyer assented to all the contents therein. Without more, the provisions contained in such a homeowner's manual are immaterial, "except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes," Ex parte Isbell, 708 So.2d 571, 578 (Ala.1997) (emphasis and internal quotation marks omitted), they would not have received the homeowner's manual.
In this case, it is not contendedmuch less, demonstratedthat Hennis invoked the warranty or, in any manner, accepted the benefits thereof. On the contrary, Southern Energy, in merely stating that "[a]fter purchasing the home, Plaintiff became dissatisfied ... and filed suit," Brief of Appellant, at xiii (emphasis added), apparently concedes that Hennis did not attempt to invoke the warranty. Other than the breach-of-express-warranty claim itself, the record is devoid of evidence indicating that Hennis assented to the terms in the Homeowner's Manual, including the warranty and the arbitration provisions.
We hasten to point out that, under the recent precedent of this Court, Hennis may not pursue his breach-of-express-warranty claim against Southern Energy. This is so because he cannot rely on the express written warranty and, at the same time, disavow the arbitration provision contained therein. Ex parte Warren, 718 So.2d 45 (Ala.1998). Cf. Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131 (Ala. 2000) (overruling Southern Energy Homes, Inc. v. Lee, 732 So.2d 994 (Ala. 1999), and holding that the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq., does not "invalidate[] arbitration provisions in a written warranty issued by a manufacturer of consumer goods"); Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000) (mobile-home buyers could not pursue a breach-of-express-warranty claim based on an express warranty they said they never received).
For the foregoing reasons, the order of the trial court is affirmed.
AFFIRMED.
HOUSTON, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX, SEE, and LYONS, JJ., concur in the result, but dissent from the rationale.
SEE, Justice (concurring in the result, but dissenting from the rationale).
I concur in the result to affirm the trial court's order denying Southern Energy's motion to stay court proceedings and compel William D. Hennis to arbitrate his claims against Southern Energy. However, I dissent from the rationale of the main opinion.
Southern Energy produced no evidence indicating that the arbitration clause contained in its express limited warranty related to a transaction involving interstate commerce.[2] Therefore, Southern Energy failed to establish that the Federal Arbitration Act applies. See 9 U.S.C. § 2. Accordingly, the trial court correctly denied Southern Energy's motion to compel arbitration, because Alabama law provides that arbitration agreements are not specifically enforceable. See Ala.Code 1975, § 8-1-41. Therefore, I concur in the result reached by the main opinion.
I disagree, however, with the conclusion in the main opinion that Southern Energy failed to prove that Hennis had assented to the arbitration clause in the express limited warranty. Hennis cannot sue to enforce the terms of the warranty, yet contend that he has not assented to the terms of the warranty. This case is distinguishable from Southern Energy Homes, Inc. v. *110 Kennedy, 774 So.2d 540 (Ala.2000), in which this Court held that, although the plaintiffs' complaint included a claim alleging breach of an express warranty, the trial court was entitled to find that the plaintiffs had not assented to the terms set forth in a specific express-warranty form, including an arbitration clause, offered by the defendant. In that case, the evidence before the trial court was in conflict as to whether the plaintiffs had received the warranty form containing the arbitration provision. Unlike the plaintiffs in Kennedy, Hennis does not dispute that he received the warranty that contained the arbitration provision. His complaint specifically mentions the arbitration provision. Under the circumstances of this case, where it is clear that Hennis is suing to enforce the written warranty that contains the arbitration provision, this Court should not hold or state as dictum that Hennis did not assent to the terms of the warranty. Therefore, I dissent from the rationale of the main opinion.
Finally, because I cannot conclude that Hennis has not assented to the terms of the express limited warranty that he has sued to enforce, I dissent from statement in the main opinion that "Hennis may not pursue his breach-of-express-warranty claim." 776 So.2d at 109. On the current state of the record, which is devoid of evidence indicating that the arbitration clause related to a transaction involving interstate commerce, it is possible that Hennis assented to the arbitration clause and yet that that clause is not specifically enforceable. Thus, Hennis's claim alleging breach of Southern Energy's express warranty is not necessarily inconsistent with his opposition to Southern Energy's motion to compel him to arbitrate his claims.
NOTES
[1] Southern Energy does not argue that it is entitled to arbitrate on the basis of the contract between Jack Lee and Hennis, but relies, insteadas it did in the trial courtsolely on the clause included in its warranty. An "intertwining" argument would be unavailing at any rate, due to the fact that Jack Lee did not move to compel arbitration. "In other words, `intertwining' requires at least two threads to weave togetherone cannot intertwine a single thread." Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala. 2000).
[2] Southern Energy relies solely on an unsworn statement of one of its managers in its attempt to establish that the transaction with Hennis involved interstate commerce; however, that unsworn statement is not evidence.