JOHNSTONE, Justice.
Willard Cain petitions this Court for a writ of mandamus directing the St. Clair Circuit Court to vacate its order compelling Cain to arbitrate his claims against Chandeleur Homes, Inc.[1] Because the evidence does not show the existence of a contract to arbitrate, we issue the writ.
On March 27, 2000, Cain purchased a new manufactured home, manufactured by Chandeleur Homes, Inc. On November 15, 2000, Cain sued Chandeleur Homes for fraudulent misrepresentation and breach of express and implied warranties “in that the said new home was not constructed in a workmanlike manner and contained numerous defects in the workmanship and materials.... ” (Exhibit A to Petition.)
Moving the trial court to compel Cain to arbitrate his claims, Chandeleur argued:
“Each and every Chandeleur home comes with a written factory warranty, which is Chandeleur’s only contract with the owner. The affidavit of David Bridges, Sales Manager of Chandeleur Homes, states that a copy of this contract of warranty, attached hereto as Exhibit ‘A,’ is placed in an accessible and safe place within the home as is required by law. Chandeleur places the warranty contract in one of the kitchen drawers in each and every home that it manufactures inside an envelope that also contains the Manufactured Home Owners Manual. Attached as Exhibit ‘B’ is a copy of one of the pages of the Homeowner’s Manual which places conditions on the warranty contract with the owner. Among these conditions is that all claims or controversies are to be submitted to arbitration, and that the owner waives any right to a jury trial.
“Plaintiffs have ratified and affirmed the warranty contract with Chandeleur by filing this lawsuit and alleging breach of this warranty therein. Plaintiffs may not pick and choose which portions of the warranty contract with Chandeleur they wish to obtain benefits under while simultaneously avoiding other provisions they do not wish to be bound by.
“Under the authority of Southern Energy Homes, Inc. v. Ard, [772 So.2d 1131 (Ala.2000)], all of Plaintiffs claims against Chandeleur are to be arbitrated.”
(Motion to Compel Arbitration, Exhibit C to Petition; emphasis added.) In support of Chandeleur’s motion to compel arbitration, Chandeleur submitted an affidavit by its sales manager, David Bridges; an affidavit by its purchasing manager, Andrew Joseph Schmidt; a copy of a “Limited One Year Service Warranty”; and a copy of one page from a “homeowner’s manual” containing an arbitration provision. The page from the manual (not the warranty) reads, in toto:
“A Special Word to you, the Manufactured Home Owner
“The National Manufactured Housing Construction and Safety Standards Act of 1974 was enacted to improve the quality and durability of manufactured homes ánd to reduce the number of injuries and deaths caused by manufac *1023 tured home accidents. The Federál manufactured home construction and safety standards issued under the Act govern how manufactured homes must be constructed. Your manufactured home was manufactured to the standards. The standards cover the planning and construction of your homes. They were developed so that you would have a safe, durable home. The standards do not cover such aspects of the manufactured home as furniture, carpeting, certain appliances, cosmetic features of the home and additional rooms or sections of the home that you have added.
“The Act provides that if for some reason your manufactured home is found not to meet the standard or to contain safety hazards, the manufacturer of the manufactured home must notify you of that fact. In some cases where there is a safety hazard involved, the Act requires the manufacturer to correct the manufactured home at no cost to you or to replace the home or refund all or a percentage of the purchase price. If you believe you have a problem for which the Act provides a remedy, you should contact the dealer, the manufacturer, the manufactured home agency in your state (see the list on page 23 of this manual), or the Department of Housing and Urban Development. Our address is printed on the front cover of this manual. We recommend that you contact either your dealer or us first, because that is the quickest way to have your complaint considered.
“All disputes, claims or controversies arising from or relating to this Contract or the parties thereto should be resolved by binding arbitration by one arbitrator selected by you with my consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any county having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein, THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree that the arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunc-tive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial relief (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce a monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment, or to enforce the security agreement shall not constitute a waiver of the right to any party to compel arbitration regarding any other *1024 dispute or remedy subject to arbitration in the Contract including the filing of a counterclaim in a suit brought by you pursuant to this provision.
“To assist us should we need to contact you, please insure that the dealer has filled out and mailed the first part of the Owner Registration Card which we have provided.”
(Exhibit G to Petition; capitalization in original.) The “Limited One Year Service Warranty,” a separate document from the page of the homeowner’s manual, does not contain any arbitration provision and does not contain any reference to any arbitration provision in the homeowner’s manual. The “Limited One Year Service Warranty” reads, in pertinent part:
“CHANDELEUR HOMES, INC., the manufacturer, warrants that it will remedy substantial defects in materials or workmanship in the new manufactured home identified above in the manner and to the extent stated in this limited service warranty.
“LEGAL RIGHTS: This warranty gives you specific legal rights and you may also have other rights which vary from state to state. This limited service warranty does not exclude any implied warranties to which you are entitled under state law, but any such warranties are limited to the time periods during which service will be provided by Chan-deleur under this limited service warranty. Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.
“This limited warranty is intended to comply with the requirements of the Magnuson Moss Warranty Act, regulations of the Federal Trade Commission issued thereunder, and any future inquiry which you make. Chandeleur Homes needs you to register the purchase of your home with us, this is not necessary, however, for your warranty to be in effect.”
(Exhibit F to Petition; emphasis added.) The warranty is not signed by either party, although it contains a blank signature line and a blank date line at the end of the document. (Exhibit F to Petition.)
In an affidavit, Chandeleur’s Sales Manager David Bridges swore:
“As part of my duties, I manage the service department of Chandeleur Homes. Among our files, which are kept in the normal and customary method of our business, is the service file for the home made the basis of this lawsuit which contains information concerning repairs made to the home. I have reviewed the house file on this home, and note that warranty repairs were made to this home by the dealer, Johnnie’s Homes, Inc. I have also reviewed the lawsuit filed against Chandeleur in this case and note that there is a claim for breach of written warranty.
“Each and every Chandeleur home comes with a written factory warranty, which is our only contract with the owner. A copy of this contract of warranty is attached hereto as Exhibit ‘A’. Our warranty does not warrant the home to be free from defects. Our warranty instead provides that we will repair defects in the home that are reported to us.
“As required by law, our written warranty contract is placed in an accessible and sáfe place within the home. We place the warranty contract in one of the kitchen drawers in each and every home that we manufacture inside an envelope that also contains the Manufactured Homeowners Manual. Attached as Exhibit ‘B’ is a copy of one of the pages of the Homeowner’s Manual *1025 which places certain conditions on the warranty contract with the owner. Among these conditions is that all claims or controversies are to be submitted to arbitration, and that the owner waives any right to a jury trial.”
(Exhibit D to Petition; emphasis added.) In another affidavit, Chandeleur’s Purchasing Manager Andrew Joseph Schmidt swore:
“Chandeleur Homes, Inc., a Michigan Corporation with its principal offices in Boaz, Alabama is a subsidiary of Champion Enterprises, a publicly traded corporation. Chandeleur sells manufactured homes in several southern states, including Alabama. I am familiar with the process involved with the manufacturing of one of our homes, and can state that there are numerous components that go into one of our homes which are manufactured outside the state of Alabama and which are shipped into the state of Alabama via interstate commerce for inclusion in one of our homes. Attached as Exhibit ‘A’ is a partial list of ‘Out of State’ suppliers to Chandeleur Homes, Inc. for each and every home that we build, the state in which the products are made, and a description of the products that we use. For each single wide home and double wide home that we manufacture, and have manufactured for at least the last 5 years, there is at least $4,000 and $6,000, respectively, paid by Chandeleur to these ‘Out of State’ suppliers for components. Chandeleur Homes writes checks to its suppliers drawn on funds located in a bank in Ann Arbor, Michigan.”
(Exhibit E to Petition.)
Opposing Chandeleur’s motion to compel arbitration, Cain asserted:
“1. That the Plaintiff has never received or entered into any arbitration agreement with the Defendant. See the affidavit of the Plaintiff Willard H. Cain attached to this response. See Southern Energy Homes, Inc. v. Hennis, [776 So.2d 105] (Ala.2000).
“2. That no valid and enforceable written agreement exists between the above parties which is necessary before binding arbitration is mandated. Southern Energy Homes, Inc. v. Ard, [772 So.2d 1131] (Ala.2000).
“3. That the Plaintiff’s claim against the Defendant is not based upon any warranty given by the Defendant containing any arbitration language. The Plaintiff, therefore, has not ratified and affirmed any warranty containing an agreement to arbitrate or otherwise waived the Plaintiffs right to a trial by jury.”
(Exhibit H to Petition; emphasis added.) Cain also submitted an affidavit wherein he swore:
“My name is Willard H. Cain. I am over the age of 21 years and I am the Plaintiff in the above styled matter. Attached to this affidavit as Exhibit ‘A’ is a copy of Chandeleur Homes, Inc.’s ‘Limited One Year Service Warranty’ which was purported to have been left in my mobile home when I purchased the home in March of 2000. Also attached to this affidavit as Exhibit ‘B’ is an arbitration agreement which I understand Chandeleur Homes claims to have left at my mobile home when it was purchased. Not only have I never signed or agreed to any such arbitration agreement, no such arbitration agreement was left in my mobile home as part of any warranty agreement or as part of a Homeowner’s Manual. In fact I never received a Homeowner’s Manu *1026 al from Chandeleur Homes regarding my mobile home.
“I have never received any written warranty from Chandeleur Homes, Inc. regarding my mobile home. I was verbally told that Chandeleur Homes gave a one year warranty on the material and workmanship in my mobile home.”
(Exhibit B to Petition; emphasis added.)
A party who moves to compel arbitration bears the initial burden of establishing by substantial evidence (1) the existence of an agreement to arbitrate in (2) a contract or transaction substantially affecting interstate commerce. Conseco Fin. Corp. v. Sharman, 828 So.2d 890 (Ala.2001), and American Gen. Fin., Inc. v. Morton, 812 So.2d 282 (Ala.2001). If the movant successfully carries this initial burden, then the burden shifts to the opposing party to submit substantial evidence creating a genuine issue of material fact on either or both of those elements of arbitra-bility — the agreement and the substantial effect on interstate commerce. Id. If the opposing party carries this burden and creates such a genuine issue of material fact, then the fact-finder must decide it. If such a fact-finding is based entirely on evidence in writing — affidavits, written discovery, exhibits, or the like — or imdisput-ed oral testimony, which an appellate court can judge as well as the trial court, an appellate court will review the fact-finding de novo, with no presumption of correctness. Ex parte Horn, 718 So.2d 694 (Ala.1998), and Lilly v. Palmer, 495 So.2d 522 (Ala.1986). Only if such a fact-finding is based, at least in substantial part, on oral testimony the appellate court cannot observe as well as the trial court, will the fact-finding be accorded the ore tenus presumption of correctness. Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538 (Ala.1988), and Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Legal conclusions are never accorded a presumption of correctness on appellate review. Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994). If the party moving to compel arbitration fails to carry the initial burden of submitting substantial evidence supporting both of the essential elements of arbitrability — the agreement and the substantial effect on interstate commerce — then no burden shifts to the opposing party. Ex parte Greenstreet, 806 So.2d 1203 (Ala.2001). Rather, the motion to compel should be denied, Ex parte Greenstreet, and the ruling will be reviewed de novo. Sharman and Morton, supra.
The dispositive issue is whether Cain and Chandeleur agreed to arbitrate. Our resolution of this issue against Chandeleur pretermits any analysis of whether the contract or transaction substantially affected interstate commerce.
“ ‘[Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.’ ” AT & T Techns., Inc. v. Communication Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); and see Ex parte Lovejoy, 790 So.2d 933 (Ala.2000). “ When deciding whether parties agree to arbitrate a certain matter (including arbitrability) courts generally ... should apply ordinary state-law principles that govern the formation of contracts.’ ” Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala.2000) (quoting First Opitions of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). “ ‘The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.’ ” Ex parte Grant, 711 *1027 So.2d 464, 465 (Ala.1997) (quoting Strength v. Alabama Dep’t of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)). “Assent must be manifested by something. Ordinarily, it is manifested by a signature. [However], [a]ssent may be manifested by ratification.” Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala.2000) (citing Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622, 625 (Ala.1999)), wherein this Court remanded the case to the trial court for a finding of whether the purchasers of a manufactured home ratified and thereby accepted an arbitration provision by accepting repairs pursuant to a warranty containing the arbitration provision. Distinguishing Southern Energy Homes, Inc. v. Harcus in Southern Energy Homes, Inc. v. Hennis, this Court held:
“However, the manufacturer’s unilateral enclosure of an arbitration provision in a homeoumer’s manual is— without more — insufficient as a matter of law to show that the buyer assented to all the contents therein. Without more, the provisions contained in such a homeowner’s manual are immaterial, ‘except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes,’ Ex parte Isbell, 708 So.2d 571, 578 (Ala.l997)(emphasis and internal quotations marks omitted), they would not have received the homeowner’s manual.”
Hennis, 776 So.2d at 108-109 (some emphasis original; some emphasis added).
Chandeleur maintains that, although Cain did not sign an arbitration agreement, his assent to arbitrate is evidenced by his acceptance of the benefits of the warranty through repairs and service guaranteed by the warranty. Specifically, Chandeleur states, “Chandeleur does not dispute that the warranty contract and arbitration limitation were not signed by Petitioner; however, Chandeleur vehemently denies that Petitioner did not ratify them by requesting warranty service on his home and by alleging breach of Chan-deleur’s warranty agreement in the instant lawsuit.” (Respondent’s brief, p. 6.) Relying on Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131 (Ala.2000), Chandel-eur argues, “Petitioner cannot on one hand seek the benefits of an agreement while at the same time repudiate other provisions of it.” (Respondent’s brief, p. 7.)
Chandeleur’s reliance on Ard to require Cain to arbitrate his claims is misplaced. Ard is distinguishable from the case before us in that, there, the warranty itself contained an arbitration agreement between Southern Energy and the Ards, and the Ards did not submit any evidence to refute the existence and their acceptance of the arbitration agreement. The Ards had requested and received service under the warranty before they attempted to repudiate the arbitration agreement contained in the warranty. In the instant case, the warranty does not contain any arbitration provision. Rather, the warranty expressly states that it “gives you specific legal rights and you may also have other rights ... [and it] does not exclude any implied warranties.” (Exhibit F to Petition.)
In the case before us, the only arbitration provision is in a page from a homeowner’s manual, which Chandeleur has not proven to be a contract existing between Cain and Chandeleur. Indeed, Chandeleur Sales Manager David Bridges’s affidavit, as quoted above, swears that the “written factory warranty [containing no arbitration provision] ... is our only contract with the owner.” (Exhibit D to Petition; emphasis added.) Although Chandeleur maintains that the homeowner’s manual containing the arbitration provision “places certain conditions on the warranty contract with the *1028 owner,” see Bridges’s affidavit, the only-page of the homeowner’s manual containing the arbitration provision itself does not even mention the “Limited One Year Service Warranty” and cites only duties of a manufacturer of a manufactured home and the rights of a purchaser as provided by a federal safety statute, as distinguished from a warranty. (Exhibit G to Petition.) Furthermore, Chandel-eur’s “unilateral enclosure of an arbitration provision in a homeowner’s manual is ... insufficient as a matter of law to show that [Cain] assented to all the contents therein.” Hennis, 776 So.2d at 108-09. Moreover, unlike the Ards, Cain has submitted his affidavit as evidence that he never received either a homeowner’s manual or the “Limited One Year Service Warranty” which Chandeleur claims it left in a kitchen drawer in the manufactured home sold to Cain.
Because the evidentiary materials submitted by Chandeleur in support of its motion to compel Cain to arbitrate his claims do not establish the existence of contract containing an arbitration agreement between Cain and Chandeleur, Cain is entitled to mandamus relief. Accordingly, we issue a writ of mandamus directing the St. Clair Circuit Court to vacate its order compelling the petitioner Cain to arbitrate his claims against Chandeleur Homes.
WRIT GRANTED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.

. Rule 4(d), Ala. R.App. P., as amended effective October 1, 2001, provides that an order either granting or denying a motion to compel arbitration is reviewable by appeal. On March 8, 2001, before the effective date of this amendment, Cain filed his petition for a writ of mandamus, which was then the appropriate mode of review, Ex parte Napier, 723 So.2d 49, 51 (Ala. 1998).