YATES, Presiding Judge.
Johnnie Mae Perkins, Bridgette Johnson, Stanlene Sager, and Tiffany Cotton (hereinafter collectively referred to as “the plaintiffs”), relatives of Joyce Cotton, sued Howard G. Johnson and Johnson Memorial Funeral Directors, Inc. (hereinafter collectively referred to as “the defendants”), on August 28, 2001, alleging a breach of contract, fraud, and the tort of outrage. The defendants moved the court for a summary judgment. On September 10, 2002, the trial court entered a summary judgment in favor of the defendants. The plaintiffs appeal following the denial of their post-judgment motion.[1] This case was trans *1147 ferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
In reviewing the disposition of a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the mov-ant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
The evidence viewed in a light most favorable to the plaintiffs indicates the following: In June 2001, Joyce Cotton was suffering from terminal cancer and was hospitalized. Because Joyce’s death was inevitable, the plaintiffs decided to make funeral arrangements for her. The plaintiffs met with Howard Johnson, and his assistant, Stephanie Hughes, on June 29, 2001, to discuss a “pre-need” funeral arrangement for Joyce. The plaintiffs explained to Johnson that Joyce was critically ill and could die at any time.
Johnson informed the plaintiffs that a funeral for Joyce would cost $5,500. Perkins paid Johnson $1,000; Johnson told the plaintiffs that they could pay the balance in 12 monthly installments of $375. After the parties agreed to the payment terms, Johnson presented the plaintiffs with a document that contained an itemized funeral-statement invoice setting forth the services offered and the amounts charged the plaintiffs for those services. The document indicated that the total cost of the funeral, as agreed upon by the parties, was $5,500; it also indicated that an initial cash payment of $1,000 had been made by the plaintiffs and that a balance of $4,500 remained. The document also contained the following language:
“I hereby acknowledge that I have the legal right to arrange these services, and I authorize this funeral establishment to perform services, furnish goods, and incur outside charges specified on this Statement. I acknowledge that I have received, on this date, the General Price List and have been offered for review the Casket Price List and Outer Burial Container Price List. I also acknowledge execution and receipt of a copy of this Statement.
“Terms of Payment: The Balance Due is payable $375.00 per month for 12 consecutive months, until paid in full. After 6/29/02 a FINANCE CHARGE of 1 1/2% monthly (ANNUAL PERCENTAGE RATE of 18%) will be added to the unpaid portion of the Balance Due, which is the AMOUNT FINANCED. I agree to pay and or guarantee payment of the charges listed on this Statement, plus any applicable finance charges, in the event of default of payment. I agree to pay reasonable attorney’s fees and court costs. I agree that the liability imposed by law upon the estate, and *1148 this agreement does not constitute a release of liability. By my signature below acknowledgment and agreement of the above is hereby made.”
Immediately below this language appears the signatures of the four plaintiffs. Immediately below the signatures of the four plaintiffs appears the following language: “This funeral establishment agrees to provide all services, merchandise and cash advances indicated on this Statement.” Johnson’s signature appears immediately below this language. This document is numbered “page 2.”
After the plaintiffs had signed the document discussed above, Johnson presented the plaintiffs with a document entitled “Irrevocable Pre-Funeral Agreement.” This document provides, in part:
“Should death occur prior to completion of payment in full, the amount paid by nominee shall be applied as a credit to funeral services at current day prices. “This is an Irrevocable Agreement and NO Refunds will be given.”
This document was numbered “page 1”; it is not initialed or signed by the plaintiffs. After being presented with the second document, Sager inquired as to the term “irrevocable.” Howard Johnson stated that the term “irrevocable” meant that the agreement was a “done deal.” After the plaintiffs had been presented the documents and had signed the first document, Johnson informed the plaintiffs that if Joyce died before all 12 installment payments had been made, the balance would have to be paid in full before the funeral services would be rendered.
Approximately two days after the plaintiffs had signed the agreement, Joyce slipped into a coma. Tiffany Cotton contacted Howard Johnson and informed him that Joyce’s condition had worsened and that her death was imminent. Cotton informed Johnson that she and the other plaintiffs could not afford to pay the remaining balance owed for the funeral services, and she asked if they could “break the contract.” Johnson told Cotton that no refunds would be given and that the balance would have to be paid in full before the funeral services could be performed. Joyce died on July 8, 2001, and the plaintiffs made arrangements with a second funeral home to have her buried.
The plaintiffs argue that Howard Johnson attempted to add the irrevocable prefuneral agreement, i.e., the second document Johnson presented to the plaintiffs, to the contract after both Johnson and the plaintiffs had signed the first document outlining the itemized services to be performed and the payment terms of the contract and, therefore, they argue, the irrevocable prefuneral agreement is not part of the terms of the contract. The plaintiffs also argue that Howard Johnson’s oral statement that should Joyce die within 12 months of the date the contract was made the balance would have to be paid in full before services would be rendered was made after the document containing the payment terms had been presented to them and signed and, they argue, is therefore not part of the contract. The defendants argue that the document signed by the plaintiffs was a two-page irrevocable prefuneral agreement that provided that no services would be rendered until the remaining balance owed for the funeral services had been paid in full and that no refunds would be given.
To recover on a breaeh-of-con-tract claim, a plaintiff must prove: “(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.” Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995). The *1149 elements of a contract are: (1) an offer and acceptance, (2) consideration, and (3) mutual assent to the essential terms of the contract. Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105 (Ala.2000). A party’s assent to the terms of a contract must be manifested by something; ordinarily a party’s assent is manifested by a signature. Id.
After reviewing the record in a light most favorable to the plaintiffs, we conclude that a question of fact exists as to whether the plaintiffs assented to the terms contained in the irrevocable prefun-eral agreement. Howard Johnson presented the plaintiffs with the document describing the services the defendants agreed to provide and the terms of payment for those services agreed upon by Johnson and the plaintiffs. Bridgette Johnson and Sager testified that Howard Johnson then presented the irrevocable prefuneral agreement to them and explained that that document meant that the parties had a “done deal.” Howard Johnson then explained that should Joyce die within 12 months of the date the contract was made the remaining balance owed for the funeral services would have to be paid in full before the services would be rendered. Howard Johnson’s assertions that the contract is nonrefundable and that payment for the funeral services is accelerated upon the death of Joyce arise from the terms contained in the irrevocable funeral agreement; those terms do not appear in the document signed by the plaintiffs and Howard Johnson. As noted above, the irrevocable funeral agreement was not signed or initialed by the plaintiffs. The plaintiffs presented evidence that the terms contained in the irrevocable funeral agreement had not been presented to them until after they signed the document setting forth the essential terms of the parties’ contract. We conclude that a question of fact exists as to whether the plaintiffs assented to the terms contained in the irrevocable funeral agreement. Accordingly, the summary judgment entered in favor of the defendants is reversed and the ease is remanded for further proceedings.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. The plaintiffs make no argument on appeal regarding the propriety of the summary judg *1147 ment entered on their fraud and tort-of-outrage claims; therefore, this court will address only the propriety of the summary judgment entered on their breach-of-contract claim.