ALMON, Justice.
Robert B. Grant and Fraunda M. Grant, husband and wife, petition for a writ of mandamus ordering Judge William E. Hereford, of the Circuit Court of St. Clair County, to set aside his order compelling arbitration of the Grants’ claims against Palm Harbor Homes, Inc., and Minton Industries, Inc., d/b/a Minton Home Center. The Grants bought a mobile home from Minton. The mobile home had been manufactured by Palm Harbor.
The only arbitration clause pertaining to this purchase is in a “Worksheet-Estimate” that a Minton salesperson filled out and signed. The Grants also signed the worksheet. It is dated September 14, 1994. At the top of the worksheet is the following language:
“Customer has executed a credit application in conjunction with this worksheet-estimate and understands that this is merely an estimate and there is no contractual obligation or right to buy until the customer’s credit has been approved and a retail installment contract or other contract or [sic] sale is signed by the custom *465 er. This worksheet-estimate may be subject to change.”
An “Arbitration Provision” appears at the bottom of the worksheet, stating, in part:
“Ail Parties hereto agree, covenant, and consent that any and all controversies or claims arising out of or in any way relating to this agreement whether in the nature of covenant, warranty or any other branch [sic] of this agreement shall be settled solely by arbitration....”
Also before us is a “Mobile Home Invoice and Bill of Sale,” dated November 9, 1994, and signed by the Grants, whereby they “hereby acknowledge receipt of the described Mobile Home and a copy of this invoice.” The bill of sale gives the price of the unit, its description, its serial number, and other particulars.
Because the “Worksheet-Estimate” specifically states that it creates “no contractual obligation or right to buy,” it is not a contract. “The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.” Strength v. Alabama Dep’t of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993); Steiger v. Huntsville City Bd. of Ed., 653 So.2d 975, 978 (Ala.1995).
“A test of good consideration for a contract is whether the promisee at the instance of the promisor has done, forborne or undertaken to do anything real, or whether he has suffered any detriment, or whether in return for the promise he has done something he was not bound to do, or has promised to do some act or to abstain from doing something.”
Roberts v. Lindsey, 242 Ala. 522, 525, 7 So.2d 82, 84 (1942); Russell v. Russell, 270 Ala. 662, 668, 120 So.2d 733, 738 (1960). “[T]o constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise.” Smoyer v. Birmingham Area Chamber of Commerce, 517 So.2d 585, 587 (Ala.1987).
In the “Worksheet-Estimate” neither party has promised to do anything: “there is no contractual obligation or right to buy until ... a retail installment contract or other contract [of] sale is signed by the customer.” The “invoice and bill of sale” form contains no arbitration clause. It makes no reference to any terms from the worksheet; rather, the terms of the sale are stated in the bill of sale, just as they are in the worksheet. Other than the purported arbitration agreement, the worksheet expressly disavows the creation of any contractual obligations, and none of the terms of the worksheet are expressly incorporated into any later document by which the parties are contractually bound.
Minton and Palm Harbor object that the Grants did not make this argument to the circuit court. However, the face of the documents before us show that there is no contract in which the parties have agreed to arbitrate, and the defendants have not attempted to refute this showing. They argue that “where there is more than one writing involved in a transaction, the court interprets the writings together,” ANCO TV Cable Co. v. Vista Communications Ltd. Partnership I, 631 So.2d 860, 863 (Ala.1993). However, that general principle of contract law cannot apply here, where the “worksheet-estimate” states unequivocally that it creates no obligations or rights in either party. Therefore, we see no basis on which the circuit court could properly have granted the motion to compel arbitration, and we will not deny the writ based simply on the defendants’ assertion that the plaintiffs did not point out to the circuit court the language on the face of the documents.
Under these facts, we hold, as we did in Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala.1997), that an arbitration clause in a document that reflects initial negotiations does not become a binding agreement to arbitrate when the parties later execute an entirely separate contract that contains no arbitration clause and does not depend for its terms or enforcement upon any terms in the initial document. In short, the evidence before us does not show a contract between Minton Industries and the Grants that contains an arbitration agreement. Therefore, the order compelling arbitration is due to be set aside.
*466 Additionally, the order compelling arbitration of the Grants’ claim against Palm Harbor is due to be set aside on the authority of Ex parte Isbell, 708 So.2d 571 (Ala.1997), because Palm Harbor is not a party to the contract between the Grants and Minton Industries, or to any contract by which the Grants have agreed to submit disputes with it to arbitration.
WRIT GRANTED.
SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent, with opinion by SEE, J.