[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
 On Application for Rehearing
The opinion of September 16, 2005, is withdrawn, and the following is substituted therefor.
Henry Singleton and Shelby Singleton appeal from a partial summary judgment entered by the Coosa Circuit Court in favor of State Farm Fire Casualty Company. We affirm the judgment of the trial court.
 I. Facts and Procedural History
The Singletons own a homeowners' insurance policy issued by State Farm. The roof of the Singletons' garage, which is flat and covered with an asphalt-based rolled material rather than with conventional roofing shingles, was damaged by wind in June 2001, and the Singletons filed a claim with State Farm under their homeowners' policy. The agent who sold the Singletons their policy inspected the roof and informed the Singletons that he did not think the policy would cover their claim. Subsequently, a State Farm claims adjuster, Crystal Worth, examined the roof. The Singletons provided her with two estimates they had obtained from roofers who proposed to replace the entire roof. The Singletons had had their garage roof completely replaced in May 2001,before the wind damage occurred. Mrs. Singleton testified in deposition that the estimates the Singletons gave Worth were obtained in May 2001. Mr. Singleton testified that he could not remember when the estimates were obtained, but that he believed they were obtained after the wind damage had occurred. After her inspection, Worth informed the Singletons that she believed that the damaged portion of the roof could be patched for less than $500, the amount of the deductible on the Singletons' policy. Therefore, Worth explained, State Farm would not pay the Singletons' claim. She later sent the Singletons a letter formally denying their claim.
The Singletons, through their attorney, sent a letter to Worth requesting that she reconsider her decision to deny payment on the claim. They included with their letter the two previously provided estimates for the replacement of the entire roof. The activity log in the Singletons' claims file contains an entry indicating that Worth spoke with one of the roofers who supplied the estimates. In a letter dated after the entry in the claims file, Worth again informed the Singletons that State Farm would not pay their claim because the damaged portion of the roof could be repaired for less than the amount of the deductible on their policy.
The Singletons sued State Farm, alleging breach of contract and bad-faith refusal to pay their claim.[1] The basis of the breach-of-contract claim is State Farm's failure to pay for the replacement of the entire roof, which the Singletons say was necessary in order to restore the roof to *Page 283 
its condition before the wind damage. The basis of the bad-faith-failure-to-pay claim is the Singletons' contention that State Farm failed to adequately investigate their claim.
State Farm moved for a summary judgment on both counts. The trial court entered a summary judgment in favor of State Farm on the bad-faith claim but denied it as to the breach-of-contract claim. Pursuant to Rule 54(b), Ala. R. Civ. P., the trial court certified its judgment as final, and the Singletons appealed.
 II. Standard of Review
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion. . . ." McClendonv. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958
(Ala. 1992).
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,639 So.2d 1349, 1350 (Ala. 1994).
 III. Analysis
The Singletons rely on State Farm Fire Casualty Co. v.Slade, 747 So.2d 293 (Ala. 1999), in which this Court discussed the previously recognized distinction between "normal" and "abnormal" bad-faith cases. In the "normal" bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim. Slade, 747 So.2d at 306. In the "abnormal" case, bad faith can consist of: 1) intentional or reckless failure to investigate a claim, 2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, 3) the manufacture of a debatable reason to deny a claim, or 4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim. 747 So.2d at 306-07. The instant case is an "abnormal" bad-faith case.
"`Bad faith . . . is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will.'" Slade, 747 So.2d at 303-04
(quoting Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916,924 (Ala. 1981)). The Singletons contend that the trial court erred in entering a summary judgment in favor of State Farm on the Singletons' bad-faith claim. They argue that they presented substantial evidence indicating that State Farm did not properly investigate their claim and/or that it failed to conduct a cognitive evaluation or review of their claim. Instead, the Singletons argue, State Farm manufactured a rationale in order to deny their claim.
In Slade, the plaintiffs' home had been severely damaged as a result of soil shifting, *Page 284 
which was caused by lightning striking and destroying a retaining wall. The plaintiffs' homeowners' insurance policy generally covered damage caused by lightning, but it did not cover damage resulting from "earth movement." Based on that exclusionary provision in the policy, the defendant insurance company refused to pay the claim, and the plaintiffs sued, alleging breach of contract and bad-faith refusal to pay an insurance claim. This Court held that the plaintiffs had presented sufficient evidence in support of their contention that the insurance company failed to investigate their claim properly; thus the defendant insurance company was not entitled to a judgment as a matter of law on the plaintiffs' bad-faith claim:
 "The Slades produced evidence indicating that [the defendant insurance company] never, in the course of its investigation, sent to their home someone who was qualified to conduct a lightning investigation. The Slades presented evidence indicating that [the defendant] never interviewed any of the witnesses present on the day lightning struck their retaining wall. The Slades presented expert testimony indicating that these omissions amounted to an improper investigation, on the basis that an investigation of a claim such as the Slades made required the use of a lightning expert. The Slades also presented evidence indicating that [the defendant] did not investigate lightning as a cause. The Slades produced evidence indicating that [the defendant] told its engineer, Buck Durham, to investigate a `possible soil problem' and that it did not tell Durham about the lightning strike. This evidence conflicted with [the defendant's] `Good Faith Claims Handling' video, which was admitted into evidence and which contained a statement that [the defendant's] claims-handling policy was to attempt to find coverage."
Slade, 747 So.2d at 315. This Court agreed with the plaintiffs that the evidence "created a question of fact as to whether [the insurance company] properly investigated [the plaintiffs'] claim, and, therefore, that the trial court properly submitted [the] . . . bad-faith claim to the jury." 747 So.2d at 315.
In the instant case, the Singletons contend that they have presented substantial evidence indicating that State Farm was guilty of bad faith in failing to investigate their claim properly. They contend that the evidence shows that the only cognitive evaluation performed by State Farm was performed by Worth, State Farm's claims adjuster, not by anyone with any real expertise who could make a recommendation as to whether the Singletons' entire roof needed to be replaced in order to repair the damaged portion properly. The Singletons also point out that State Farm's claims manual notes that it may be necessary to replace an entire roof in order to repair such damage and notes further that a claims adjuster should "consider the individual circumstances each claim presents and make a decision based on the merits of each case as determined in the investigation." The claims manual also instructs its adjusters that "[i]f there is a dispute over the amount of damage, [the claims representative is to] meet with the insured and roofer at the risk and reinspect." The Singletons contend that they presented substantial evidence indicating that Worth failed to follow these instructions and that the evidence shows that Worth simply made her own determination (without consulting with an expert) that the roof could be fixed by patching rather than by full replacement.
State Farm contends that Worth is "thoroughly qualified to assess the damage to the Singletons' garage roof," because she has adjusted claims on at least 2,500 *Page 285 
roofs, "a lot" of them being the type of flat roof involved in this case. State Farm also contends that its investigation of the Singletons' claim was adequate because, it says, the agent who sold the Singletons their policy examined the roof within three days of receiving notice of the damage. It also notes that Worth, who later examined the damage herself, took photographs of the roof, drew a diagram of the roof reflecting the location of the damaged portion, and prepared an "itemized estimate using data gathered from her on-site investigation to determine that the cost of repairing the damaged area was less than the Singletons' deductible."
We need not decide whether, if the preceding was the only evidence presented, a genuine issue of material fact would exist as to the adequacy of State Farm's investigation. As noted, the evidence also shows that, after Worth sent the Singletons a letter explaining her conclusion that the roof could be repaired by patching, as well as formally denying their claim, the Singletons had their attorney send Worth a letter asking her to reevaluate her conclusion and included in that letter the two previous estimates the Singletons had obtained for replacing the roof. Worth's activity log for the Singletons' claim contains an entry dated after Worth received that letter. The entry indicates that Worth placed a telephone call to one of the roofers who had prepared the Singletons' estimates:
 "Called Old Southern Rfg. Co. — spoke to Kenneth Deason — [h]e advised his [estimate] is for reroofing [the Singletons'] rolled roofing w/a mop down 3 ply built-up roof. He could've replaced w/same for $1200 but won't do that kind of roof [because] it doesn't last. If roof was new had wind [damage] he could've repaired the roof for [less than] $250."
(Emphasis added.) It is undisputed that the Singletons' roof was new at the time of the wind damage. The record also contains a letter Worth sent to the Singletons' attorney after Worth had her conversation with Kenneth Deason. In that letter, Worth states:
 "I contacted Old Southern Roofing Company and spoke to Kenneth Deason. He advised me that the estimate written was for a different type of roofing than the roofing currently on the Singleton's [sic] garage. He advises that rolled roofing does not last, and he wrote the estimate for three-ply built-up roofing. He advised that it would be approximately $1,200.00 for a rolled roofing estimate to replace that area. Mr. Deason also advised me that a new roof that had wind damage, such as the damage seen in this claim, could be repaired. He advised me that he could make those repairs for less than $250.00. Therefore, we respectfully decline to change the amount of the initial estimate."[2] *Page 286 
With respect to Worth's entry in the activity log stating that Deason informed her that he "could've repaired the roof for [less than] $250," the Singletons contend that, while Deason may have concluded that it would cost $250 "to do a patch job . . . [a] reasonable jury could find that . . . Kenneth Deason actually believed that a patch was not appropriate but believed that, in this situation, the entire rolled roof had to be replaced." (Singletons' reply brief, at 14.) The Singletons cite an affidavit Deason executed at a point in time after the Singletons' attorney had requested that their claim be reevaluated and after Worth and Deason had had their telephone conversation. In that affidavit, Deason stated, "[b]ecause of the nature and extent of the storm damage to Mr. Singleton's roof, the section of the roof could not have been properly repaired. The section of roof had to be replaced in order to function properly." While Deason's actual belief regarding what needed to be done in order to repair the roof properly may be material to the Singletons' breach-of-contract claim, the issue presented on this appeal is whether Worth's telephone conversation with Deason, when combined with her other efforts, constitutes an adequate investigation sufficient to withstand the Singletons' claim of bad faith. Deason's statement in his first affidavit conflicts with the following statement he made in a later affidavit:
 "I have reviewed and placed my initials on the photographs of the Singleton's [sic] house and garage attached to this affidavit. . . . To repair the damage shown in these photographs it would not be necessary to replace the entire roof I could have repaired the damage shown in these photographs for less than $500.00."
(Emphasis added.)
The activity log, when combined with Deason's second affidavit, shows the absence of a genuine issue of material fact regarding the adequacy of State Farm's investigation of the Singletons' claim. The evidence shows that Worth contacted Deason and that she understood him to believe that the damage to the Singletons' roof could be repaired without replacing the entire roof. The only testimony from Deason cited in response by the Singletons is the affidavit Deason executed after his conversation with Worth. On State Farm's motion for a summary judgment, which relied on evidence of Worth's conversation with Deason, the burden of persuasion shifted to the Singletons to adduce facts contradicting such evidence and creating a genuine issue of material fact. However, the evidence consisting of the entry in the activity log describing the telephone call indicating that Deason told Worth that he could repair the roof without replacing it stands uncontroverted. Fair-minded persons in the exercise of impartial judgment could not reasonably infer from the evidence in this record that Worth did not understand Deason to believe that the roof could be fixed without completely replacing it. It is not possible to infer from the record before us that Worth decided to deny the Singletons' claim without consulting any outside source.
That Worth might not have strictly complied with the letter of the claims manual under the circumstances here presented may indicate bad judgment or negligence, *Page 287 
but more than bad judgment or negligence is required in a bad-faith action. Slade, 747 So.2d at 303-04. The Singletons have failed to adduce sufficient evidence of "dishonest purpose" or "breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will." Id.
Therefore, we hold the trial court did not err in entering a summary judgment for State Farm on the Singletons' bad-faith claim, and we affirm that judgment.
APPLICATION FOR REHEARING OVERRULED; OPINION OF SEPTEMBER 16, 2005, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The Singletons also included in their complaint a count alleging negligence against the State Farm agent who sold them the policy. The agent is now deceased, and the negligence count has been voluntarily dismissed.
[2] The Singletons did not contend in the trial court, nor do they contend here, that the activity log and Worth's subsequent letter outlining her conversation with Deason, events occurring after State Farm's initial denial of the claim, were irrelevant to the issue of bad faith. Cf. Jones v. Alabama Farm Bureau Mut.Cas. Co., 507 So.2d 396, 400 (Ala. 1986) ("Mrs. Jones also argues that Farm Bureau's `reinvestigation' was the only investigation of the claim and was conducted after the initial, actionable denial of the claim occurred. . . . We address Mrs. Jones's second issue first by noting that the investigation conducted by Farm Bureau after Kratzer's denial of the claim cannot serve as an arguable basis for denying the claim initially, because `whether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision was made.' National Savings LifeInsurance Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982) (emphasis supplied)."). To the extent that the Singletons make this contention in their appellate brief (the argument is at best only obliquely presented), we cannot reverse the judgment of the trial court based on an argument not made below and urged for the first time on appeal. Andrews v. Merritt Oil Co.,612 So.2d 409, 410 (Ala. 1992). We therefore must, based solely on the posture of the issues in this proceeding, consider these documents as relevant to the issue whether State Farm acted in bad faith in refusing to pay the Singletons' claim.