Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2024-0586

_____

**Franklin Structures, LLC**

**v.**

**Karl Edmond Williams and Tonya Marie Williams**

**Appeal from Baldwin Circuit Court**
**(CV-23-900330)**

MENDHEIM, Justice.

Franklin Structures, LLC ("Franklin"), appeals from the Baldwin

Circuit Court's order denying, in part, its motion to compel arbitration of

all the claims asserted in an action commenced by Karl Edmond Williams and Tonya Marie Williams. We reverse and remand.

## I. Facts

On July 7, 2020, the Williamses executed a sales contract with Whitson Builders, LLC ("Whitson"), to purchase a custom two-story, three-bedroom, two-bathroom modular home manufactured by Franklin. Whitson is a modular-home retailer whose principal place of business is located in Gulf Shores. Franklin is a modular-home manufacturer whose manufacturing plant is located in Russellville.

Modular homes are similar to mobile homes in that both are prefabricated off-site at a factory. However, a mobile home is delivered to the property on which it rests and it is capable of being moved. In contrast, a modular home is transported in pieces to the property on which it is to be assembled; the modular home is then assembled and attached to a foundation. According to a document in the record, "modular homes are held to the same local state and regional building codes required for on-site homes. Manufactured homes are held to a federal code set by the Department of Housing and Urban Development ...."

2

The sales contract stated in part: "[Whitson] agrees to sell and [the Williamses] agree[] to buy and take delivery of the Whitson Builders, LLC, building product, in accordance with the provisions of this contract." It is undisputed that the sales contract identified Franklin as the manufacturer of the modular home.[1] The total sales price for the home was $353,000. The sales contract provided that Franklin would deliver the manufactured pieces of the modular home to the assembly site on Sea Oaks Drive in Fort Morgan and that Whitson would assemble the home.[2] Additionally, the sales contract contained the following provision:

"**6. <u>Exclusion of Warranties</u>**

"<u>[The Williamses] understand[] that [Franklin], not [Whitson], will provide any warranties on the Home. [Whitson] will give [the Williamses] a copy of the manufacturer's warranty. [The Williamses] understand[] that [the Williamses] will obtain any warranty service on the Home from [Franklin] and not from [Whitson]</u>.

"[Whitson] hereby disclaims and excludes all implied or expressed warranties relating to the Home, including but not limited to the implied warranties of merchantability, fitness

---

[1]Technically, the sales contract identified the "manufacturer" as "Franklin Homes, LLC," but the parties agree that the manufacturer's corporate legal name is Franklin Structures, LLC.

[2]The Williamses previously had purchased that property for their retirement home.

3

for a particular purpose, warranties of habitability, and workmanlike construction, to the Home."

(Bold typeface and first emphasis in original; second emphasis added.)

That page of the sales contract was initialed by both Karl and Tonya, and the sales contract as a whole was signed by both Karl and Tonya.

On June 7, 2021, Franklin delivered the manufactured pieces of the home to the Williamses' property. In their complaint, the Williamses alleged that "this was the very first two-story modular home manufactured and delivered in Alabama by Franklin, and the first one assembled by Whitson." The Williamses further alleged:

> "22. Unbeknownst to [the Williamses], Defendants, collectively and/or individually, arranged for a film crew to be on their property to film the delivery of the Home, and it was broadcast on television news and being featured on Defendants' websites and social media accounts.

> "23. Because Whitson Builders and Franklin were advertising, the Home was transported from Russellville to Fort Morgan without the finished siding in place at the factory, as is customarily done. Instead, the siding was unpainted, unfinished, and uninstalled, so the Franklin logo could be readily seen as it travelled over four hundred miles and be easily seen on television."

Despite the pride Franklin and Whitson allegedly took in the project, the Williamses alleged that, because of "improper preparations, delivery, and installation of the Home by Defendants, the plumbing, electrical, walls,

4

and other components were and are incomplete, non-functioning, malfunctioning, incomplete, and/or out of alignment." The Williamses' quintessential example of the allegedly shoddy workmanship was that "the second-floor door intended to lead to an upstairs deck instead opened to the slope of the roof, becoming a non-functioning 'door to nowhere.'"

On December 3, 2021, the Williamses closed on the home and moved into it because, according to their complaint, "they had nowhere else to go, had retired, and had already sold their home in Northern Alabama." The Williamses alleged that they had reached out to Franklin and Whitson several times to have issues with the home repaired, but their requests were ignored. As it relates to Franklin, the Williamses specifically alleged: "From August 8, 2022, through August 17, 2022, the Franklin defendants failed to repair or restore most of the outstanding issues."

On March 27, 2023, the Williamses commenced an action in the Baldwin Circuit Court against Franklin, Whitson, and several other defendants that they alleged were involved in the sale, manufacturing, delivery, assembly, foundation preparation, and repair of the home. On June 15, 2023, the Williamses filed a "First Amended Complaint." On

July 6, 2023, the Williamses filed a "Second Amended Complaint" that simply added one defendant to the lawsuit. On July 14, 2023, Franklin filed an answer to the Williamses' second amended complaint.

On December 2, 2023, the Williamses filed their "Third Amended Complaint," which is their operative complaint for purposes of this appeal. In that complaint, the Williamses asserted numerous claims against Franklin and all the other defendants, including breach of contract, fraud, negligence, recklessness, negligence per se, wantonness, unjust enrichment, violations of the Magnuson-Moss Warranty Act, breach of the implied warranty of habitability, and breach of fitness for a particular purpose. Count Nine of the third amended complaint provided:

"**BREACH OF EXPRESS WARRANTIES**

"121. [The Williamses] incorporate and re-allege the foregoing allegations of their Complaint.

"122. Defendants expressly warranted that the Home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the Home was expressly fit, designed, and built as directed by [the Williamses], and that the Home was free from defects in materials and workmanship, or any defects would be repaired or replaced under the warranty.

"123. The home, as delivered, was not free from defects in the materials or workmanship.

6

"124. These Defendants have failed or refused to correct the defects in the Home and/or warranty has failed in its essential purpose causing the [Williamses] to suffer injury and damages.

"125. As a direct and proximate result of the breach of warranties by Defendants, individually and collectively, by and through agency, [the Williamses] have been proximately damaged."

(Bold typeface and emphasis in original.)

On January 23, 2024, Franklin filed a "Motion to Enforce Non-Binding Mediation and Binding Arbitration and Brief in Support Thereof" ("motion to compel arbitration"). Franklin based its motion on language contained in Exhibit B of the "Franklin Homes Homeowner's Manual" ("the homeowner's manual"). Exhibit B addressed Franklin's "One Year Limited Warranty" on the home. Within the warranty portion of the homeowner's manual was the following provision:

"**MEDIATION AND ARBITRATION**.

"**The parties acknowledge and agree that this Mediation and Arbitration Agreement is a condition of the sale and is a material part of the consideration for the sale of the Home. The parties further acknowledge that the purchase of this Home involves interstate commerce**.

"**ARBITRATION AND LIMITATION OF REMEDIES**: It is agreed that any controversy, claim or dispute between or among the Manufacturer, Original

Consumer Purchaser(s), retailer, independent dealer, finance company or any other person or entity arising from or relating to the Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturer's limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration and limitation of remedies provision [collectively 'Claim(s)'], and if the Claim(s) cannot be resolved through direct discussions or negotiations, the Claim(s) first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration. The parties agree that they will share equally in the administrative costs charged by the [American Arbitration Association] for the mediation. While you do not need an attorney to participate in mediation, any party choosing to use legal counsel must pay their own legal fees.

"Unless otherwise provided by law, if a dispute is not resolved through Mediation, the parties agree to settle the dispute through binding Arbitration (as defined by the Federal Arbitration Act) under the then current Rules of the American Arbitration Association ('AAA'). … The AAA shall administer the proceedings of the Arbitration in the county where the Home was sold, unless the parties agree otherwise. … Any such dispute shall be arbitrated on an individual basis, and shall not be consolidated in any Arbitration with any dispute of any other party. …

"…. The parties further agree if any party brings any claim through a traditional court without first submitting the claim to mediation, and then to arbitration, as required by the Agreement, then the party bringing such claim shall be required to pay all of the other party's costs and expenses,

8

including attorney's fees, to stay or dismiss such claim and/or to transfer it first to Mediation and then to Arbitration. …

   **"IT IS AGREED AND UNDERSTOOD THAT THE PARTIES ARE KNOWINGLY GIVING UP AND WAIVING ANY RIGHT TO TRIAL BY JURY**. This arbitration and limitation of remedies provision is part of the manufacturer's limited warranty for the Home and shall be binding on an inure to the benefit of the parties' respective hers and assigns."

(Bold typeface and emphasis in original.)

In its motion to compel arbitration, Franklin contended that the foregoing provision in the homeowner's manual was binding upon the Williamses because: (1) they had received a copy of the homeowner's manual; (2) they had requested, received, and approved warranty work on the home by Franklin; and (3) they had asserted express-warranty claims against Franklin in their complaint. Additionally, Franklin argued:

   "The arbitration provision in the Limited Warranty is a broad agreement that requires the arbitration of all claims the [Williamses] may have against not only Franklin, but also 'the retailer, independent dealer, finance company or any other person or entity arising from or relating to the Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance any other condition … ' In short, the arbitration provision covers any claim asserted against any entity involving the Home. Further, the [Williamses'] Complaint seeks damages against all the Defendants in this lawsuit, 'jointly and severally,

9

combined and concurring.' ... Therefore, the [Williamses'] claims must be adjudicated in a single proceeding. That proceeding must be the mediation, and then if necessary, binding arbitration, contemplated by the arbitration provision in the Limited Warranty."

Franklin concluded its motion by requesting that the trial court "enter an order dismissing this case and compelling the [Williamses'] claims to be resolved through ... non-binding mediation and/or arbitration."

In support of its motion to compel arbitration, Franklin attached an affidavit from its sales manager Blake Jackson. Among other things, Jackson testified that "[t]he component materials used in the manufacture of the Home were purchased from suppliers throughout the United States, Mexico and Canada." He also stated that the Williamses' home

"was manufactured at Franklin's facility in Russellville, Alabama and was shipped to Whitson Homebuilders, LLC ('Whitson') on June 7, 2021. The Home was picked up at Franklin's manufacturing facility in Russellville, Alabama, and then transported by common carrier to Whitson's facility, located [on] Lakeshore Drive, Gulf Shores, Alabama. Thereafter, the home was delivered to the [Williamses'] property located [on] Sea Oates Drive, Gulf Shores, Alabama."

Finally, Jackson declared:

"7. Each home manufactured by Franklin is shipped with a Homeowner's Manual. The home was covered by a one-year limited warranty, a copy of which is included in the

10

Homeowner's Manual. Following Whitson's delivery and setup of the Home, Franklin performed warranty services in accordance with the limited warranty. The warranty services occurred on February 13, 2022, August 8, 2022, and August 17, 2022."

Attached to Jackson's affidavit were copies of the warranty work orders that he had described. The work orders contained work-order numbers; the address of the Williamses' home; the "Retail Customer," who was listed as Karl Williams; and printed descriptions of problems with the home, which were followed by handwritten notes from the technician as to what was done about the listed problems. Each work order was signed at the bottom by Karl and the technician, and each handwritten description from the technician was initialed by Karl. Issues listed in the work orders included: kitchen cabinets being hung one-inch off-level; adjustments needed to the exterior doors; trim, shoe mold, and baseboards not being leveled or caulked; no attic access; a bow in the front end wall of the first and second story and on the stairwell wall; and missing air vents in the master bedroom. According to the work orders, all listed issues were fixed except the problem of the trim and baseboards not being leveled; the technician wrote that "[t]he walls are not leveled. Completely different issue." The technician indicated that a revisit would

11

be required to fix that issue, but there is no indication on subsequent work orders that the issue was repaired.

On July 24, 2024, the Williamses filed a response in opposition to Franklin's motion to compel arbitration. In that response, the Williamses contended that the arbitration provision in the homeowner's manual was not binding because "it was not a condition of the sale" because it was not shown to them or signed when the Williamses paid for their home. They also argued that they did not assent to the arbitration agreement through Franklin's "disingenuous pretending to repair part of the defectively constructed home …. Even if the few diddly squat items Franklin tried to fix are purportedly covered by arbitration, the whole case is not." The response further asserted that the Williamses "never received the generic Franklin homeowner's manual containing an arbitration provision and purportedly thrown somewhere in the home before it was shipped down the Alabama highway without siding to the [Williamses'] property in Fort Morgan."

The Williamses attached numerous exhibits to their response in opposition to the motion to compel arbitration. Among those exhibits was the report summarizing a home inspection engineer Joseph Asarisi had

performed for this lawsuit, which concluded that the pieces of the modular home "do not match up, which results in gaps between the structural members and produces other structural deficiencies." Asarisi also concluded that the home "does not meet the structural code and will not meet the minimum wind requirements." Another exhibit included excerpts from a second home inspection by Lydell Johnson of Property Claims Damage Consulting that detailed numerous alleged issues with the home. Both Karl and Tonya submitted affidavits, but neither affidavit provided any testimony concerning: (1) whether they had received the homeowner's manual, (2) whether they were aware of the terms of Franklin's one-year warranty, or (3) what they thought about the warranty services provided by Franklin.

On July 29, 2024, the trial court held a hearing on Franklin's motion to compel arbitration. On July 31, 2024, the trial court entered an order that provided: "Motion to compel filed by Franklin Structures, LLC, is hereby denied in part as to arbitration." Franklin appeals that order.

## II. Standard of Review

As is noted in the rendition of the facts, the arbitration provision at issue in this case is not a straightforward arbitration provision because

13

it dictates that disputes "first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration" and that, "if a dispute is not resolved through Mediation, the parties agree to settle the dispute through binding Arbitration (as defined by the Federal Arbitration Act) under the then current Rules of the American Arbitration Association ('AAA')." In other words, we have before us a mediation and arbitration provision, not just an arbitration provision, which raises the issue whether our ordinary method of dealing with arbitration appeals should be employed in this case?

Lee v. YES of Russellville, Inc., 784 So. 2d 1022 (Ala. 2000), also involved a mediation and arbitration provision. After observing that "[a] trial court's denial of a motion to stay proceedings pending arbitration is reviewable by direct appeal," id. at 1025, the Lee Court made the following observation in a footnote:

> "The contract at issue required that the parties first submit their dispute to mediation. Should the parties fail to resolve all their disputes in mediation, the contract required them to proceed to binding arbitration. Although this is not solely an arbitration provision, then, we nonetheless conclude that our caselaw stating the method of review to be applied in cases involving arbitration clauses is applicable, because the contract ultimately requires the parties to submit to binding

14

arbitration to resolve their dispute if mediation fails to resolve it. We note that we have previously reached the same conclusion in other cases. See, e.g., Homes of Legend, Inc. v. McCollough, 776 So. 2d 741 (Ala. 2000)."

Id. at 1025 n.1 (emphasis added). In subsequent cases, this Court has continued to entertain appeals from mediation and arbitration provisions under Rule 4(d), Ala. R. App. P. See, e.g., Digital Forensics Corp. v. King Mach., Inc., [Ms. SC-2024-0031, Jan. 10, 2025] __ So. 3d __ (Ala. 2025). Consequently, we will do the same in this case.

> "'This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala.1995) (opinion on application for rehearing).'"

Elizabeth Homes, L.L.C. v. Gantt, 882 So. 2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000)).

### III. Analysis

15

Franklin contends that the trial court erred by denying its motion to compel arbitration. Franklin argues that the Williamses were bound by the arbitration provision in the homeowner's manual for two reasons: (1) because the Williamses obtained warranty services from Franklin on at least three occasions and (2) because the Williamses asserted express-warranty claims in their complaint. According to Franklin, because the Williamses were bound by the arbitration provision in the homeowner's manual, the trial court had to grant Franklin's motion to compel arbitration in its entirety.

In response, the Williamses argue that they are not bound by the arbitration provision because: (1) they never received the homeowner's manual, and thus they were not aware of the arbitration provision; (2) they never signed an agreement with Franklin that contained an arbitration provision; and (3) the Franklin warranty work orders that Karl Williams signed are not reliable because they were attached to an affidavit from Franklin sales manager Blake Jackson that contained false information.

We begin by noting what is undisputed between the parties. First, it is undisputed that the homeowner's manual contains an arbitration

16

provision. It is also undisputed that the transaction at issue affects interstate commerce. Finally, it is undisputed that the Williamses did not sign the homeowner's manual or the warranty portion of the manual that contained the arbitration provision. Therefore, for the arbitration provision to be binding upon the Williamses, assent to it must be shown by some other means.

> "'"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' <u>AT&T Techns., Inc. v. Communication Workers of America</u>, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); and see <u>Ex parte Lovejoy</u>, 790 So. 2d 933 (Ala. 2000). '"When deciding whether parties agree to arbitrate a certain matter (including arbitrability) courts generally ... should apply ordinary state-law principles that govern the formation of contracts."' <u>Oakwood Mobile Homes, Inc. v. Barger</u>, 773 So. 2d 454, 459 (Ala. 2000) (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). '"The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."' <u>Ex parte Grant</u>, 711 So. 2d 464, 465 (Ala. 1997) (quoting <u>Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt.</u>, 622 So. 2d 1283, 1289 (Ala. 1993)). 'Assent must be manifested by <u>something</u>. Ordinarily, it is manifested by a <u>signature</u>. [However], [a]ssent may be manifested by <u>ratification</u>.' <u>Southern Energy Homes, Inc. v. Hennis</u>, 776 So. 2d 105, 108 (Ala. 2000) (citing <u>Southern Energy Homes, Inc. v. Harcus</u>, 754 So. 2d 622, 625 (Ala. 1999)), wherein this Court remanded the case to the trial court for a finding of whether the

17

purchasers of a manufactured home ratified and thereby accepted an arbitration provision by accepting repairs pursuant to a warranty containing the arbitration provision."

Ex parte Cain, 838 So. 2d 1020, 1026-27 (Ala. 2002).

Franklin contends that the facts in this case "are essentially identical to those in Southern Energy Homes, Inc. v. Ard, 772 So. 2d 1131 (Ala. 2000)." Franklin's brief, p. 8.

> "In Ard, the Ards sued Southern Energy Homes, the manufacturer of the Ards' mobile home, alleging a violation of Southern Energy's express warranty, a violation of the Magnuson-Moss Warranty -- Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. ('the Magnuson-Moss Act'), and the negligent manufacture of the mobile home. The Ards also alleged fraud. Southern Energy sought to compel arbitration of the Ards' claims on the basis of an arbitration provision contained in its express warranty. Evidence in the form of an affidavit by Southern Energy employee Don McNutt indicated that the Ards had requested and received service under the warranty on their mobile home from Southern Energy. The evidence also indicated that the Ards did not sign any written agreement with Southern Energy expressly calling for arbitration. The trial court denied Southern Energy's motion to compel arbitration, and it appealed. After discussing the burdens imposed upon Southern Energy to establish its right to compel arbitration, … this Court concluded that the trial court's order denying arbitration was due to be reversed:
>
>> " 'The Ards are contractually bound to the arbitration provisions for two reasons. First, the affidavit of Don McNutt establishes, without contradiction, that the Ards have accepted the benefits of the warranty containing the arbitration

18

provisions. This acceptance constitutes the Ards' acceptance of the arbitration provisions themselves. Rush v. Atomic Electric Co., 384 So. 2d 1067 (Ala. 1980). Second, the Ards have sued Southern Energy on the theory, among others, of express warranty. The only express warranty included in the evidentiary materials is the one containing the arbitration provisions. A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions. Value Auto Credit, Inc. v. Talley, 727 So. 2d 61 (Ala. 1999); Infiniti of Mobile, Inc. v. Office, 727 So. 2d 42 (Ala. 1999); Georgia Power Co. v. Partin, 727 So. 2d 2 (Ala. 1998); Delta Constr. Corp. v. Gooden, 714 So. 2d 975 (Ala. 1998); Ex parte Dyess, 709 So. 2d 447 (Ala. 1997).'

"772 So. 2d at 1134-35. The Court therefore concluded that the record showed the formation of a valid agreement to arbitrate, and it reversed the trial court's order denying Southern Energy's motion to compel arbitration."

Springhill Nursing Homes, Inc. v. McCurdy, 898 So. 2d 694, 698-99 (Ala. 2004) (plurality opinion) (emphasis added).

The Williamses seek to counter Ard with Southern Energy Homes, Inc. v. Hennis, 776 So. 2d 105, 107 (Ala. 2000), a case with some factual similarities to Ard, but in which this Court stated:

"However, the manufacturer's unilateral enclosure of an arbitration provision in a homeowner's manual is -- without more -- insufficient as a matter of law to show that the buyer assented to all the contents therein. Without more, the provisions contained in such a homeowner's manual are immaterial, 'except in the utterly collateral sense that if the

19

plaintiffs had never purchased their mobile homes,' Ex parte Isbell, 708 So. 2d 571, 578 (Ala. 1997) (emphasis and internal quotation marks omitted), they would not have received the homeowner's manual.

"In this case, it is not contended -- much less, demonstrated -- that Hennis invoked the warranty or, in any manner, accepted the benefits thereof. On the contrary, Southern Energy, in merely stating that '[a]fter purchasing the home, Plaintiff became dissatisfied ... and filed suit,' Brief of Appellant, at xiii (emphasis added), apparently concedes that Hennis did not attempt to invoke the warranty. Other than the breach-of-express-warranty claim itself, the record is devoid of evidence indicating that Hennis assented to the terms in the Homeowner's Manual, including the warranty and the arbitration provisions."

776 So. 2d at 108-09 (some emphasis added). This Court in Hennis concluded that the trial court in that case had not erred in denying the motion to compel arbitration. However, the Court did observe that, "under the recent precedent of this Court, Hennis may not pursue his breach-of-express-warranty claim against Southern Energy. This is so because he cannot rely on the express written warranty and, at the same time, disavow the arbitration provision contained therein." Id. at 109.

Similar to Hennis, in Southern Energy Homes, Inc. v. Kennedy, 774 So. 2d 540 (Ala. 2000), this Court affirmed a trial court's denial of a Southern Energy motion to compel arbitration because the plaintiffs in affidavits had "state[d] unequivocally that they never received the

20

warranty Southern Energy says it extended and that Southern Energy has never provided any service to them pursuant to that warranty." Id. at 547. As in Hennis, though, the Kennedy Court held that the plaintiffs were "foreclosed from maintaining any claim they may have had against Southern Energy for its alleged breach of the express written warranty." Id.

Ard is a more apt comparison to this case than either Hennis or Kennedy. In both Hennis and Kennedy, the plaintiffs had not availed themselves of the services provided under the subject warranties. In contrast, in Ard the plaintiffs did accept the benefits of warranty service, and this Court held that "[t]his acceptance constitutes the Ards' acceptance of the arbitration provisions themselves." Ard, 772 So. 2d at 1134. Likewise, in this case, Franklin submitted evidence showing that the Williamses accepted warranty services from Franklin on at least three separate occasions.

The Williamses attempt to explain away the importance of those work orders, but their explanations are unconvincing. First, the Williamses argue that the work orders themselves did not state that they were connected to Franklin's limited warranty. See the Williamses' brief,

21

p. 10. But the work orders did not need to do so. As we noted in the rendition of the facts, the sales contract the Williamses executed with Whitson expressly stated that "[the Williamses] understand[] that [Franklin], not [Whitson], will provide any warranties on the Home" and that "[the Williamses] understand[] that [the Williamses] will obtain any warranty service on the Home from [Franklin] and not from [Whitson]." The Williamses both signed the sales contract, and they each initialed the page that contained information about the warranty on their home. Thus, when the Williamses contacted Franklin to perform work on the home, they were on notice that it was work performed under the warranty Franklin provided -- a warranty that contained an arbitration provision.

Second, the Williamses complain that one of the work orders is double-dated -- for August 8 and August 17, 2022. The Williamses assert that this was because on August 8, 2022, "the representative sent by Franklin … did no work and told the Williamses that there were too many repairs for him to manage and to get an attorney." The Williamses' brief, p. 3. However, the Williamses fail to provide a record citation that supports their assertion, and their own affidavits provided no testimony

concerning the warranty services established by the work orders. As Franklin observes, the Williamses have not denied that a "Franklin technician came to their home on August 8, 2022," or that "Franklin returned on August 17, 2022, and Mr. Williams clearly acknowledged th[at] warranty services were provided that day."[3] Franklin's reply brief, pp. 10-11. In short, the Williamses failed to establish their allegation of a lack of work performed on August 8, 2022, and, even if they had, that point ignores the reality that the Williamses did have Franklin perform warranty work on their home.

Third, the Williamses seem to imply that the work orders attached to Jackson's affidavit should be ignored because, according to the Williamses, that affidavit "contains false information." The Williamses' brief, p. 1. Specifically, the Williamses state that, in his affidavit, Jackson incorrectly testified that the home was transported from Franklin's manufacturing facility in Russellville to Whitson's facility, and then to

---

[3]As Franklin also notes: "The authorizations concern two work orders. Work pursuant to work order [number] 130755 was performed February 13, 2022, while work performed pursuant to work order [number] 150069 was performed on both August 8, 2022, and August 17, 2022." Franklin's reply brief, p. 9 n.2. The fact that two of the work orders contain the same work order number would explain why one of the work orders is double-dated.

the Williamses' property. According to the Williamses, their home "was not shipped to a retail destination, but rather directly to the Williamses' lot." The Williamses' brief, p. 5. In other words, the home was not taken to Whitson's business address before it was transported to the Williamses' property.[4]

For its part, Franklin concedes that factual discrepancy in its reply brief, but it contends the error is immaterial.

> "It appears the Williamses are correct about this inaccuracy, though it would also seem to be the very definition of harmless error. … Whether [the home] was first shipped to Whitson's facility in Gulf Shores, or shipped directly to the Williamses' property -- also in Gulf Shores -- has no bearing on … whether the Williamses' claims against Franklin must be arbitrated."

Franklin's reply brief, p. 8 (emphasis in original).

Franklin is correct that the conceded error in Jackson's affidavit has no direct bearing on the arbitration issue, but its argument ignores the Williamses' more general assertion that, because Jackson's affidavit contained erroneous information, the entire affidavit, and the evidence

---

[4]In their brief, the Williamses also assert that the homeowner's manual was not delivered to them with the home. See the Williamses' brief, p. 7 (stating that "[t]here was no homeowner's manual in the Williamses' home"). However, there is no sworn evidence in the record on appeal establishing that assertion.

24

accompanying it, should be discounted. However, the Williamses provide no legal authority for the proposition that the entire affidavit and its exhibits should have been ignored by the trial court because the affidavit contained one factual error. "Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived." White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008). Moreover, the Williamses did not file a motion to strike Jackson's affidavit in the trial court, and there is no indication that the trial court did not consider that evidence in reaching its judgment. Cf. Ex parte Secretary of Veterans Affairs, 92 So. 3d 771, 777 (Ala. 2012) ("[A] party must move the trial court to strike any evidence that violates Rule 56(e), Ala. R. Civ. P. An objection to the inadmissible evidence alone is not sufficient. The motion to strike brings the objection to the trial court's attention and requires action on the part of the trial court to properly preserve the ruling on appeal." (footnote omitted)). Furthermore, the Williamses do not deny that they received service work from Franklin. Instead, they simply complain that "the work authorizations deal only with small items and punt on the structural

25

ones." The Williamses' brief, p. 16. But the scale of the work performed is not the point; no such distinction was drawn in <u>Ard</u> with respect to its conclusion that acceptance of warranty work constituted ratification of the warranty's terms. Thus, we are not persuaded by the Williamses' assertion that the work orders should be ignored because of the factual inaccuracy contained in Jackson's affidavit.

In <u>Ard</u>, the Court also concluded that because the plaintiffs had asserted claims based on violations of an express warranty, and the only express warranty in evidence was the one containing the arbitration provision, the plaintiffs were bound by the arbitration provision because a party cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions. See <u>Ard</u>, 772 So. 2d at 1134-35. In <u>Hennis</u> and <u>Kennedy</u>, the Court also confirmed that the plaintiffs in those cases could not maintain their express-warranty claims without also accepting the arbitration provisions contained in those warranties. Likewise, in this case, the Williamses have asserted express-warranty claims, and the only express warranty in evidence is the one contained in the homeowner's manual. Therefore, the Williamses' express-warranty

26

claims constitute another reason they are bound by the arbitration provision in the warranty provided by Franklin.

As we have explained, and as <u>Ard</u> dictates, because the Williamses accepted warranty services from Franklin and they have asserted express-warranty claims against Franklin, they are contractually bound by the arbitration provision contained in the warranty portion of the homeowner's manual.[5] The only question that remains, then, is whether the trial court's July 31, 2024, order correctly implemented the arbitration provision?

As we noted in the rendition of the facts, the trial court's order stated: "Motion to compel filed by Franklin Structures, LLC, is hereby denied in part as to arbitration." Because the trial court denied

---

[5]The Williamses also have argued that the arbitration provision is unconscionable, but the argument they present on that front is entirely different than the one they presented in the trial court. "[W]e cannot reverse the judgment of the trial court based on an argument not made below and urged for the first time on appeal." <u>Singleton v. State Farm Fire & Cas. Co.</u>, 928 So. 2d 280, 285 n.2 (Ala. 2005). Moreover, the Williamses presented no evidence in support of their assertion of unconscionability. "A party must submit evidence in some form in order to preserve for appellate review that party's contention of unconscionability as a defense to the enforcement of an arbitration agreement." <u>First Family Fin. Servs., Inc. v. Jackson</u>, 786 So. 2d 1121, 1131 (Ala. 2000). Therefore, the Williamses' unconscionability argument is without merit.

Franklin's motion to compel arbitration "in part," it is possible to interpret the trial court's order as concluding that it was not ordering the case to arbitration because the provision in question requires disputes first to be submitted to nonbinding mediation and that a dispute will be submitted to binding arbitration only "if a dispute is not resolved through Mediation." If that is what the trial court intended, it read the arbitration provision correctly, but it failed to implement the provision by its terms.

> "When a trial court compels arbitration, it must do so in a manner consistent with the terms of the arbitration provision. See Ex parte Cappaert Manufactured Homes, 822 So. 2d 385, 387 (Ala. 2001) ('[section] 5 [of the Federal Arbitration Act] mandates that the method set forth in the arbitration agreement be followed'); Southern Energy Homes Retail Corp. v. McCool, 814 So. 2d 845 (Ala. 2001) (trial court directed to vacate its order because it failed to compel arbitration in a manner consistent with the terms of the agreement between the parties); Ex parte Dan Tucker Auto Sales[, Inc., 718 So. 2d 33 (Ala. 1998)] (trial court erred in assigning administrative fees of arbitration to the defendant when the Rules of the [American Arbitration Association] provided for the relief of a party in the event of hardship). A trial court's order compelling arbitration that changes the terms of the arbitration provision will be reversed when
>
> > "'it appears that the trial court, although it ordered the parties to arbitrate, failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision.'
>
> "McCool, 814 So. 2d at 849."

28

*BankAmerica Hous. Servs. v. Lee*, 833 So. 2d 609, 618 (Ala. 2002) (first emphasis added).

As we noted in the rendition of the facts, in its motion to compel arbitration, Franklin expressly requested that the trial court "dismiss[] this case and compel[] the [Williamses'] claims to be resolved through … non-binding mediation and/or arbitration." The arbitration provision requires the parties to submit disputes to nonbinding mediation and then, if necessary, to binding arbitration. A trial court is empowered to compel mediation under § 6-6-20(b), Ala. Code 1975, which provides:

> "(b) Mediation is mandatory for all parties in the following instances:
>
> > "(1) At any time where all parties agree.
> >
> > "(2) Upon motion by any party. The party asking for mediation shall pay the costs of mediation, except attorney fees, unless otherwise agreed.
> >
> > "(3) In the event no party requests mediation, the trial court may, on its own motion, order mediation. The trial court may allocate the costs of mediation, except attorney fees, among the parties."[6]

---

[6]See also Rule 2, Ala. Civil Court Mediation Rules.

Under the arbitration provision ratified by the Williamses, Franklin and the Williamses have agreed to mediation of disputes between them, and Franklin has filed a motion to compel mediation according to the terms of the arbitration provision. The trial court, however, did not compel the parties to mediation, which is contrary to the terms of the arbitration provision. Therefore, the trial court's order is due to be reversed. Cf. <u>Karibu Home Builders, LLC v. Keenum</u>, [Ms. SC-2024-0440, Dec. 20, 2024] __ So. 3d __, __ (Ala. 2024) (Cook, J., concurring in the result).

## IV. Conclusion

The Williamses are bound by the arbitration provision contained in the warranty portion of the homeowner's manual. That provision requires the parties to submit any disputes "arising from or relating to the Home" to nonbinding mediation and then, if necessary, to binding arbitration. Franklin's motion to compel arbitration correctly requested, in accordance with the arbitration provision, that the Williamses' claims be compelled to mediation and, if necessary, to arbitration. The trial court erred by failing to grant Franklin's motion to compel arbitration in a manner consistent with the terms of the arbitration provision. Therefore,

the trial court's order is hereby reversed, and the cause is remanded for the trial court to enter an order consistent with Franklin's request.

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Bryan, and McCool, JJ., concur.